## THE MARGARETTA.[1]

GREGORY and others *v.* THE MARGARETTA and THOS. F. LUBY.

*(District Court, E. D. New York. July 31, 1886.)*

ADMIRALTY — WRECKS — FORCIBLE TAKING AND WRONGFUL SALE BY WRECK-MASTER — ACTION TO RECOVER — NECESSARY PARTIES.

On November 8, 1883, the bark Margaretta took fire, and was towed to the Kill von Kull, where she was scuttled and sunk. The place where she sank was within Richmond county, New York. Her owners sold her, as she lay, to G., the libelant, who began operations to raise her. On November 23 the person occupied in raising her received notice from Luby, the wreck-master of Richmond county, to desist from work on the vessel, and, this notice being disregarded, Luby took possession of the wreck by force. A statute of the state of New York authorizes wreck-masters to take possession of wrecked property within their counties, when no owners shall appear, and, if the property is perishable, to obtain an order from the county judge, and sell the wreck at auction. Luby, having taken forcible possession of the wreck, obtained an order of sale from the county judge, and sold her to the claimant, and this action was brought by G. to recover possession. *Held*, that it is only of property abandoned by the owner, and upon such abandonment, taken possession of by the wreck-master, that a county judge has the power to direct a sale. Here there had been no abandonment by the owners. *Held, therefore*, that Luby's possession was unlawful; that the order of sale was void, and the sale itself invalid; and that libelant was entitled to the possession of the bark. *Held, also*, that Luby was improperly made a party to this action.

In Admiralty.

*T. C. Campbell*, for libelants.

*Edwin G. Davis*, for claimants.

BENEDICT, J. This is an action for the possession of the bark Margaretta. That vessel, on the eighth day of November, 1883, while being loaded with petroleum oil at a wharf in New Jersey, took fire. While on fire she was towed to a point in the Kill von Kull, opposite Sailors' Snug Harbor, in the county of Richmond, New York, and there, in 35 feet of water, she was scuttled, and sunk some 800 feet from shore. She had on board cargo that was insured, and on November 14th the insurance company made a contract with one William E. Chapman to save the cargo on board. On November 15th Chapman

---

[1] Reported by R. D. & Wyllys Benedict, Esqs., of the New York bar.

took possession of the vessel for the purpose of saving the cargo. On November 15th the owners of the vessel advertised the vessel for sale, and on November 19th she was sold at public auction, as she lay, to Matthew Gregory. On the same day Gregory took possession of her, placed a man in a scow along-side of the vessel to take care of the same. Gregory, also, on the same day, sold one-half of his interest in the vessel to Isaac Chapman. On the same day Gregory and Isaac Chapman agreed with William E. Chapman, then at the vessel with a derrick, to raise the vessel, and remove it to some proper place. On November 23d William E. Chapman, while engaged at the vessel, in pursuance of his contract, was notified by Thomas Luby, wreck-master of Richmond county, to desist from work on the vessel. The notice being disregarded, Luby, on November 27th, took the vessel by force from the possession of Chapman. Thereafter, Luby, as wreck-master, the vessel having meanwhile been raised by Luby at the expense of the county of Richmond, by virtue of a statue of the state of New York, (Rev. St. pt. 1, c. 20, tit. 12,) presented to the county judge of Richmond county a petition, setting forth, among other things, that the bark had caught fire in the Kill von Kull, in the state of New Jersey, and had been "towed down, abandoned, and sunk in the waters and territorial jurisdiction of the county of Richmond;" that on or about the twelfth day of November, 1883, he, by virtue of his powers as wreck-master, and pursuant to the resolutions of the board of supervisors of Richmond county, took possession of the said wreck, and had since continued in possession thereof, as wreck-master of Richmond county; that the wreck was, at the time of presenting the petition, attached to the shores of Richmond county, and in a perishable condition.

Upon such petition the county judge on the same day made the following order:

RICHMOND COUNTY.

*In the Matter of the Application of Thomas Luby, Wreck-master of the County of Richmond.*

On reading and filing the petition of Thomas Luby, wreck-master of the county of Richmond, verified May 7, 1884, and it appearing that a sale of the bark Margaretta, therein described as perishable, and [*sic*] that it would be beneficial to all concerned that the same be sold, and on motion of W. S. Horn-fager, of counsel for said petitioner, ordered that the said Thomas Luby, such wreck-master, be, and he is hereby, authorized to sell at public auction, to the highest bidder, the wreck of the Margaretta; that said sale shall be held at Pelton's cove, West Brighton, village of New Brighton, Richmond county, on the twenty-second day of May, 1884, at 2 P. M. of that day.

STEPHEN D. STEPHENS, County Judge.

Thomas Luby, on the fifth day of June, 1884, sold the vessel to Seguin, the present claimant, for the sum of $400. Seguin has no other title to the vessel than that derived from the sale made by the wreck-master, as above described. Upon the proofs, the libelants

are the owners of the vessel, and entitled to the possession thereof, unless their ownership was terminated by the said sale to Seguin.

The proceedings of the board of supervisors in regard to this vessel do not appear to require attention. No sale of the vessel was directed by the supervisors, nor was the vessel sold by order of the supervisors. Nothing done by the supervisors can therefore affect the validity of the claimants' title. That must stand or fall by the wreck-master's sale, made under the authority derived from the order of the county judge above set forth.

The provisions of statute under which the wreck-master acted are found in Rev. St., pt. 1, c. 20, tit. 12. The following provisions only require notice:

"Section 1. No ship, vessel, or boat, nor any goods, wares, and merchandise, that shall be cast by the sea, or any inland lake or river, upon the land, shall be deemed to belong to the people of this state, as wrecked property, but may be recovered by the owner, consignee, or person having the charge thereof, at the time of the happening of the disaster by which the wreck was occasioned, upon the payment of a reasonable salvage, and necessary expenses.

"Sec. 2. The sheriff, coroners, and wreck-masters of every county in which any wrecked property shall be found, when no owner, or other person entitled to the possession of such property, shall appear, shall severally have power, and it shall be their duty, to pursue all necessary measures for saving and securing such property; to take possession thereof, in whose hands soever the same may be, in the name of the people of this state; to cause the value thereof to be appraised by indifferent persons; and to keep the same in some safe place, to answer the claims of such persons as may thereafter appear entitled thereto.

"Sec. 3. If the property so saved shall be in a perishable state, so as to render the sale thereof expedient, it shall be the duty of the officer in whose custody the same shall be, to apply to the county judge of the county, by a petition supported by an affidavit of the facts, for an order authorizing such sale; and if the judge to whom such application shall be made, shall be satisfied that a sale of the property would be most beneficial to the parties interested, it shall be his duty to make the order so applied for.

"Sec. 4. If such order be made, the officer having custody of the property directed to be sold, shall sell the same at public auction, at the time and in the manner that shall be specified in the order; and the proceeds of such sale, deducting the expenses thereof, as the same shall be settled and allowed by the judge making the order, shall be paid to the treasurer of the county in which the property shall have been found."

Upon these provisions of statute it has been argued in behalf of the libelants that the bark Margaretta was not wrecked property, within the meaning of the statute, because, having been towed afloat to the place where she sank, and then scuttled to make her sink, in a tideway, and some 800 feet from shore, she was not "cast by the sea upon the land," within the meaning of the statute. This point may doubtless be argued, and something said against the right of the owners of ships to make their vessels a charge upon the county of Richmond by voluntarily removing them from the wharves of New Jersey, and sinking them in the waters of Richmond county. A decision upon this point is, however, unnecessary in this case, for the

reason that, assuming the vessel to have been wrecked property within the meaning of the statute, the wreck-master has not such a possession of the vessel as the act makes necessary, to clothe the county judge with authority to direct her sale. By section 2, above quoted, the power of the wreck-master to take possession of wrecked property is limited to a case when "no owner, or other person entitled to the possession of such property, shall appear." An abandonment by the owner is a fact necessary to be shown in order to justify a taking possession of wrecked property by the wreck-master, and it is only of property abandoned by the owner, and, upon such abandonment, taken possession of by the wreck-master, that the county judge has jurisdiction to direct a sale.

In the present case it has been sought to be shown that the wreck-master acquired possession of the wreck, by putting a light on it, on or about November 12, 1883, and when no one was on board. It is by no means clear that the mere fact of absence of any person from a vessel, situated as this one was, would show such an abandonment as the statute requires; and it is very plain that Luby took no possession of the vessel until after the owners had their agents in actual custody of the vessel, and at work. When, therefore, Luby first asserted his claim to the vessel as a wreck, his claim was without foundation in law, for the property was not then abandoned property. On the contrary, the owners thereof had appeared, and were in actual custody thereof. The possession of the property afterwards acquired by Luby, through force, was unlawful, and supplied no foundation for an application to the county judge, nor did it clothe the county judge with any authority to direct the sale of the vessel. For this reason, therefore, I am of the opinion that the order of said sale referred to was void; that the sale afterwards made by the wreck-master was invalid; and that the claimants acquired no title thereby.

In regard to the position of Luby as a party defendant in this case, it is sufficient to say that he was improperly joined. The action is for possession. It is an action *in rem*. Luby was not in possession of the vessel when this suit was brought, nor did he then claim any right of possession and control over her. He had sold her to the claimant James Seguin, and Seguin alone had the possession. An action of trespass against Luby cannot be joined with an action *in rem* for possession. The exception to the libel, therefore, which was argued at the hearing on the minutes, must be allowed, and Luby be discharged from this action, with his costs to be taxed.

As against the vessel, the libelants must have a decree awarding the possession thereof to them, and they must recover their costs.